EAGLE HEALTHCARE,
INC., Plaintiff,

v.

Donna E. SHALALA, Secretary, Department of Health and Human
Services, Defendant.

Civil Action No. 97–2562(TAF).

United States District Court,
District of Columbia.

June 2, 1999.

Ronald N. Sutter, Christopher L. Keough, Powers, Pyles, Sutter & Verville, P.C., Washington, DC, for plaintiffs.

Lena Robins, Department of Health and Human Services, Office of the General Counsel, Washington, DC, for defendant.

FLANNERY, District Judge.

### MEMORANDUM OPINION

This case involves the plaintiff's attempts to obtain reimbursement for services provided to medicare patients for occupational therapy ("OT") and speech therapy ("ST") services during the 1993 fiscal year. Currently pending before the court are the parties' cross-motions for summary judgment. Summary judgment is appropriate when there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This case is proper for summary judgment as it does not present any disputed issues of material fact. After holding a hearing on these motions and carefully considering the parties' contentions, the court grants the plaintiff's motion for summary judgment and denies the defendant's motion for summary judgment.

### I. Statutory and Regulatory Background

Title XVIII of the Social Security Act, Pub.L. No. 89–97, 79 Stat. 291, as amended 42 U.S.C. §§ 1395 et. seq. ("the Medicare program"), establishes a program of medical insurance for those persons age 65 or older and those under age 65 who are disabled. The Medicare program consists of two parts: Part A and Part B. Part A is funded by Social Security taxes and provides major medical insurance coverage for the costs of hospital care, related post-hospital services, home health services, and hospice care. *See* 42 U.S.C. §§ 1395c – 1395x. More specifically, Part A provides for hospital insurance benefits that cover services furnished to inpatients of an institutional provider such as a skilled nursing facility. *Id.* Part B is a federally subsidized, voluntary health insurance program. It provides supplemental insurance coverage for medical and other services excluded from Part A, including OT and ST services furnished to a Medicare beneficiary on an outpatient basis under certain circumstances. *See* 42 U.S.C. §§ 1395j – 1395w. Providers that furnish OT and ST services to Medicare beneficiaries may be reimbursed for the *reasonable cost* of those services, provided they are medically necessary. 42 U.S.C. §§ 1395d, 1395i, 1395x. There is no allegation that the services at issue in this case were not medically necessary.

The reasonable cost of a service is defined by statute as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services...." 42 U.S.C. § 1395x(v)(1)(A). The statute further provides that reasonable cost "shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs...." *Id.*

The Secretary has issued several regulations pursuant to the Medicare statutes that are at issue in this case. They read in pertinent part as follows:

> The costs of providers' services vary from one provider to another and the variations generally reflect differences in scope of services and intensity of care. The provision in Medicare for payment of reasonable cost of services is intended to meet the actual costs, however widely they may vary from one institution to another. This is subject to a limitation if a particular institution's costs are found to be *substantially out of line* with other institutions in the same area that are similar in size, scope of services, utilization, and other relevant factors.

42 C.F.R. 413.9(c)(2) (1993) (emphasis added). *See also* 42 C.F.R. 413.9 (1992) (same text).

Limitations on reimbursable costs [Cost Limits]

(a) Introduction. (1) Scope. This section implements section 1861(v)(1)(A) of the Act, by setting forth the general rules under which HCFA [the Health Care Financing Administration, an entity with authority to act on behalf of the Secretary of Health and Human Services] may establish *limits on provider costs* recognized as reasonable in determining Medicare program payments . . . (2) General principle. Reimbursable provider costs may not exceed the costs estimated by HCFA to be necessary for the efficient delivery of needed health services.

42 C.F.R. 413.30 (1993) (emphasis added). *See also* 42 C.F.R. 413.30 (1992) (same text).

> Reasonable cost of physical and other therapy services furnished under arrangements. (a) Principle. The reasonable cost of the services of physical, occupational, speech, and other therapists . . . furnished under arrangements . . . with a provider . . . may not exceed an amount equivalent to the prevailing salary and additional costs that would reasonably have been incurred by the provider or other organization had such services been performed by such person in an employment relationship, plus the cost of other reasonable expenses incurred by such person in furnishing services under such an arrangement . . . (c)(5) These provisions are applicable to individual therapy services or disciplines by means of separate guidelines by geographical area and apply to costs incurred after issuance of the guidelines but no earlier than the beginning of the provider's cost reporting period described in paragraph (a) of this section. Until a guideline is issued for a specific therapy or discipline, costs are evaluated so that such costs do not exceed what a

*prudent and cost-conscious buyer* would pay for the given service, . . . .

42 C.F.R. 413.106 (1993). *See also* 42 C.F.R. 413.106 (1992) (same text).

II. Factual Background

Plaintiff Eagle Healthcare operates three nursing facilities located in the State of Washington. Administrative Record ("AR") at 9. These nursing facilities contracted with outside therapists for the provision of OT and ST services to plaintiff's medicare residents. *Id.* After the therapists provided their pre-arranged OT and ST services, Eagle Healthcare billed the Secretary's medicare fiscal intermediary for the geographical area in question, Aetna Life Insurance Company ("Aetna"). This case deals with costs incurred during the 1993 fiscal year, which began on December 1, 1992 and ended on December 31, 1993. AR at 57. *But Cf.* Def.'s Mot. for Summary Judgment at 9, Jun. 22, 1998; Def.'s Statement of Material Facts As To Which There Is No Genuine Issue at 2, June 22, 1998 (stating that the 1993 fiscal year comprises the 1993 calendar year).

In 1994, the Secretary's representatives became increasingly concerned over escalating OT and ST costs. AR at 9. In response, Aetna and Blue Cross of Washington and Alaska conducted a study of the rates charged in the State of Washington for OT and ST services. *Id.* On the survey form, Aetna requested the price charged for therapy and copies of relevant contracts with outside therapy providers. *Id.* Aetna used the results of its rate study to formulate rate cut-offs ("market rates") for OT and ST services. *Id.* at 9–10. It subsequently applied these market rates to the costs incurred during 1993 by the plaintiff, Eagle Healthcare, in contracting with service providers in the Seattle and Yakima, Washington area for OT and ST services under the Medicare statute.[1] *Id.* at 10, 57. Aetna disallowed a portion of the expenses incurred by the plaintiff in

---

1. The Secretary of Health and Human Services subsequently established salary equiva- lency guidelines for OT and ST services. *See* 63 Fed.Reg. 5106, 5108 (Jan. 30, 1998).

**4**

contracting for OT and ST services. *Id.* It found that a portion of the OT and ST costs incurred by the plaintiff exceeded the market rates established by Aetna and that the plaintiff failed to offer a satisfactory justification for the higher costs. *Id.*

The plaintiff, pursuant to the applicable federal regulations, filed an appeal with the Provider Reimbursement Review Board ("PRRB"). AR at 59. The PRRB determined that these market rates did not constitute "cost limits" under 42 C.F.R. 413.30. AR at 69. Nevertheless, the PRRB reversed the determination of the fiscal intermediary, finding that the fiscal intermediary acted improperly in applying these market rates to the costs incurred by the plaintiff provider. *Id.* The PRRB concluded that the "Intermediary's audit adjustments were derived from an improper determination and application of the Medicare program's reasonable cost doctrine" under 42 C.F.R. 413.9(c)(2). *Id.* The PRRB found that the market rates did not accurately measure the cost of similar services in the plaintiff provider's locality in the State of Washington. AR at 70–72.

The matter then proceeded to the Administrator of the Health Care Financing Administration ("HCFA"), the representative of the Secretary of Health and Human Services ("HHS"), for final agency action. AR at 1. The HCFA reversed the PRRB and upheld the fiscal intermediary's disallowance of the costs at issue in the present action. AR at 10. The HCFA found that the market rates did not constitute cost limits under 42 C.F.R. 413.30. AR at 12. It also found that the application of the market rates to the plaintiff provider's costs was a proper application of the Medicare regulations. AR at 10–12. In so finding, the HCFA first concluded that although the market rates are not as precise as cost limits, they nevertheless provide an appropriate guide for the fiscal intermediary to determine reasonable cost. *See id.* Second, the HCFA found that there were comparable OT and ST service providers in the relevant geographic area and that the plaintiff provider could have contracted with these entities. AR 10–11. Third, the HCFA found that the prudent buyer concept and the substantially out of line principle are separate and distinct. AR at 12. Fourth, the HCFA found that both of these concepts may be used by the fiscal intermediary to limit the costs incurred by Medicare providers to reasonable amounts. *See id.*

The plaintiff provider subsequently brought suit before this court, claiming that HHS, via the HCFA, acted arbitrarily and capriciously in upholding the fiscal intermediary's disallowance of costs. In this court the parties present several conflicting arguments.

*The Parties' Contentions*

First, the defendant argues that the arbitrary and capricious standard applies to this court's review of the HCFA's legal determinations and the substantial evidence standard applies to this court's review of the HCFA's factual determinations. It devotes considerable space in its brief in an effort to persuade the court that this is a high standard that provides for a narrow review by this court.

Second, the defendant argues that the market rates at issue in this case do not constitute cost limits. The defendant contends that HHS has a duty to ensure that only reasonable costs are reimbursed by Medicare. It argues that these market rates were established in furtherance of this objective. The defendant contends that it could create market rates and apply those rates to the services for which reimbursement is sought in the present case, without creating cost limits subject to the existing provisions of the Federal Register. In support of its argument, the defendant asserts that it allowed the plaintiff provider the opportunity to put forth a reasonable explanation of why the provider incurred costs in excess of the market rates established by Aetna. It contrasts this situation with those in which the fiscal intermediary applies a cost limit estab-

lished pursuant to the provisions of the Federal Register and allows the provider almost no opportunity to present an explanation justifying the increased expense. According to the defendant, in those situations the cost limits act as a virtual per se restriction on the reimbursement, subject only to very limited exceptions. *See* 42 C.F.R. 413.30(f).

Third, the defendant argues that the application of these rates was an appropriate method of limiting Medicare costs. In support of this point, the defendant argues that Aetna applied these rates pursuant to the prudent buyer principle, *see* 42 C.F.R. 413.106(c)(5), to ensure that Medicare only reimburses reasonable costs. The defendant claims that the plaintiff provider had an obligation to not only incur costs that are substantially in line with those of other providers in the region, *see* 42 C.F.R. 413.9(c)(2), but also that the provider had a duty to seek to minimize cost (i.e. a duty to find the "most economical" option for treatment that was reasonably available, *see* § 2103 of the Provider Reimbursement Manual). The defendant argues that these market rates were an effective and viable method of effectuating these restrictions on Medicare reimbursement.

Fourth, the defendant contends that the study conducted by the fiscal intermediary provided a viable measure of whether the costs incurred by the plaintiff provider were reasonable. It contends that although the study may not be as precise as possible, it is precise enough. It argues that the rates were arrived at in a logical manner and that while they may not be scientifically precise, they do not render the HCFA's decision arbitrary and capricious.

On the other hand, the plaintiff contends that these "market rates" constitute improper cost limits that were not established via the procedures mandated by the Federal Regulations. Plaintiff points the court to 42 C.F.R. 413.30, which describes the extensive and precise actions that HHS must employ in formulating cost lim-

its for Medicare services. The plaintiff argues that these procedures were not followed in the present case and that accordingly the market rates are actually improper cost limits. The plaintiff contends that if the court permits HHS to use this procedure, then the cost limit procedures described in the Federal Regulations will be rendered meaningless. It disputes the defendant's claim that the process used by Aetna involves an ongoing review and negotiation process between Aetna, the reviewing HHS designate, and the health care provider. It points out that under 42 C.F.R. 413.30(f), HHS allows limited exceptions from cost limits based upon circumstance. Plaintiff argues that this process is virtually indistinguishable from the process in dispute here, by which the defendant applies the "market rate" and then allows the plaintiff an opportunity to present arguments justifying the higher costs. Accordingly, the plaintiff contends that this is in reality an improper application of a cost limit.

The plaintiff also contends that the substantially out of line test and the reasonableness test are one in the same; there is no alternative test of reasonableness under the prudent buyer principle that would permit additional minimizing of costs. In fact, the plaintiff contends that the defendant's action is arbitrary and capricious because it attempts to distinguish between the prudent buyer and substantially out of line tests. The plaintiff spends a considerable amount of time attacking the validity of a prudent buyer test. It specifically criticizes the agency interpretation of this regulation, found at Section 2103 of the Provider Reimbursement Manual, as improper and without effect.

The plaintiff also takes issue with the method and manner in which the study that led to the adoption of the market rates was conducted. It contends that these market rates are not probative of reasonableness because they compare apples and oranges, failing to take account of differences in treatment effectiveness, size,

and location in comparing the costs reported to Aetna and those incurred by the plaintiffs. The plaintiff contends that this is important because the Medicare regulations indicate the importance of comparing similar institutions when determining the reasonableness of an incurred cost. According to the plaintiff, the study's failings render the HCFA decision arbitrary and capricious.

Finally, the plaintiff argues that (1) the HCFA decision contravenes traditional notions of due process and fair play, (2) Section 2103 is void for vagueness, and (3) the plaintiff providers are subject to "selective enforcement" of the market amounts.

### III. Discussion

■ Both parties agree that 42 U.S.C. § 1395oo(f)(1) provides jurisdiction for this court to review final agency decisions concerning Medicare provider reimbursement disputes pursuant to the applicable provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et. seq.* Under the APA, the "standard of review is a highly deferential one, which presumes the agency's action to be valid." *Environmental Defense Fund. Inc. v. Costle,* 657 F.2d 275, 283 (D.C.Cir.1981) (citations omitted). Nevertheless, the court must ensure that "the agency action was 'based on a consideration of the relevant factors,' and that 'the agency has exercised a reasoned discretion, with reasons that do not deviate from or ignore the ascertainable legislative intent.' Our inquiry into the facts must also be searching and careful." *Costle,* 657 F.2d at 283 (citations omitted). The parties agree that the APA standard of review only permits a court to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 413–15, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); 5 U.S.C. § 706. Hence, this court must determine whether HHS, via its rep-

resentatives, exercised reasoned decision making, whether it considered the relevant factors, and whether the facts have some basis in the record. *National Treasury Employees Union v. Horner,* 854 F.2d 490, 498 (D.C.Cir.1988). Moreover, the court must limit its review under the APA to the administrative record before the agency at the time of the HCFA decision. *See Camp v. Pitts,* 411 U.S. 138, 142–43, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). These principles have previously been applied by this Circuit to a review of the HHS's compliance with the Medicare statutes and regulations. *See e.g., Memorial Hosp./Adair County Health Ctr., Inc. v. Bowen,* 829 F.2d 111 (D.C.Cir.1987). Applying these principles of law to the present dispute, this court must consider plaintiff's claim that the HCFA acted arbitrarily and capriciously in upholding the fiscal intermediary's disallowance of certain of plaintiff's OT and ST costs.

The court must initially consider whether the market rates Aetna applied to the plaintiff's OT and ST costs constitute retroactive cost limits in violation of *Bowen v. Georgetown University Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). The plaintiff contends that the market rates are retroactive cost limits because Aetna set the limits after Eagle Healthcare incurred the OT and ST costs and because the limits presumptively render the incurred costs noncompensable. The defendant argues that the Medicare program is inherently backward looking because it requires HHS's representatives to review the appropriateness of costs after they are incurred. The defendant principally argues that the market rates are not cost limits because they are not conclusive, but rather only used as a guide in determining the appropriate level of reimbursement. In response, plaintiff contends that HHS's argument is undercut by the fact that HHS will also consider a provider's justification for costs in excess of cost limits. *See* 42 C.F.R. 413.30(f).

In *Bowen,* the Secretary of HHS reissued a cost-limit schedule for 1981 during the 1984 calendar year. *See* 109 S.Ct. at 471. The Secretary's issuance retroactively disqualified the plaintiff hospitals' reimbursement of certain expenses. *See id.* The Supreme Court as an initial matter found that Congress had granted the Secretary of HHS the authority to establish limits on costs reimbursed under the Medicare program. *See id.* at 470. However, the principal issue facing the Court was whether this rulemaking authority included the power to promulgate retroactive cost limits. *Id.* The Court held that as a general matter, statutory grants of rule making authority will not be understood to encompass the power to promulgate retroactive rules unless the statute conveys the power by express terms. *Id.* at 472. Accordingly, the Court invalidated the retroactive cost limits. *See id.* at 475. In rejecting the government's arguments, the Court considered whether the "retroactive corrective adjustments" authorized by Section 1395x(v)(1)(A) supported the Secretary's action. *See id.* The Court found that "the structure and language of the statute require the conclusion that the retroactivity provision applies only to case-by-case adjudication, not to rulemaking." *Id.*

■ With regard to the present dispute, the cost limit issue is a close question that the court gave considerable attention. However, after reviewing the applicable law and the parties arguments, the court is convinced that the market rates Aetna applied are not retroactive cost limits prohibited by *Bowen.* The court agrees with the defendant and finds the crucial factor to be the willingness of HHS, via its representatives, to listen to the provider's justification for incurring costs in excess of the market rates set by the fiscal intermediary, Aetna. The court agrees with the defendant that HHS's representatives consider a wider variety of justifications for higher costs when costs exceed market rates, than when costs exceed cost limits established pursuant to 42 C.F.R. 413.30. The court considers this a significant difference that distinguishes this procedure from the type of conclusive retroactive cost limits found invalid in *Bowen.*[2] It places the procedure employed by HHS into the sphere of case-by-case adjudication and out of the uniform cost limit procedure invalidated in *Bowen.* Here, the market rates were only used as a guide to Aetna in reining in what it perceived to be exorbitant requests for reimbursement. The court also finds support for this conclusion in the unanimity of the HHS representatives that the market rates did not constitute retroactive cost limits. The representatives' unanimity on this issue contrasts with the representatives' disagreements on other issues before the court in this case.

The court is not unsympathetic to the plaintiff's argument. It clearly would have been difficult for plaintiff to anticipate the HCFA's and Aetna's subsequent decision to conduct this study, set the market rates Aetna established, and retrospectively apply these market rates to the costs incurred. Moreover, the provider has made a reasonable argument that the market rates Aetna applied are so similar to cost limits that they are in reality cost limits arrived at via improper means. Nevertheless, the court concludes that these market rates are not cost limits. Plaintiff had the opportunity during the administrative review process to offer a sufficient justification to the Secretary's representatives for the costs incurred, which differentiates

---

**2.** Plaintiff apparently disputes whether the court may properly consider this justification by the defendant, apparently arguing that the defendant did not assert in the Administrative Record that it applies a lesser standard of review when costs exceed market rates than when costs exceed cost limits. However, to the extent plaintiff makes this argument, the

court disagrees. The administrative record evidences an intent by the Secretary's representatives to consider any justification offered by the provider, in contrast to the specific circumstances outlined in 42 C.F.R. 413.30(f). A.R. at 64–65, 69, 2953. *See also* Reply Brief in Support of Defendant's Motion for Summary Judgment at 4, Aug. 17, 1998.

this process from that invalidated in *Bowen.*

However, this does not end the court's inquiry. The next issue the court must address is whether the defendant's decision properly relied upon 42 C.F.R. 413.106(c)(5), the prudent buyer concept, and 42 C.F.R. 413.9(c)(2), the substantially out of line provision, in reaching a determination of reasonable cost. The plaintiff contends that the substantially out of line provision incorporates the prudent buyer test and that the two cannot be independently applied by HHS to limit medicare reimbursement. The plaintiff also criticizes the HCFA's reliance on Section 2103 of the Provider Reimbursement Manual, which contains the agency's interpretation of the prudent buyer test. The defendant contends that both tests represent a permissible option for HHS to limit medicare reimbursements of actual cost to reasonable levels.

■ After carefully reviewing the applicable statutes and regulations, the parties' memoranda, and the parties' oral arguments, the court finds the defendant's application of the prudent buyer principle improper. The decision of the HCFA, the representative of HHS, relied to a significant extent upon the prudent buyer principle, and more specifically 42 C.F.R. 413.106(c)(5) and Sections 2102 and 2103 of the Provider Reimbursement Manual. However, the court concludes that the prudent buyer principle, regardless of its *possible* effect in some cases,[3] does not support the defendant's decision in this case. The court is convinced that application of the prudent buyer principle requires the comparison of similar items or services. However, the defendant's application of the prudent buyer principle neglected this principle and rendered the agency's reliance upon the prudent buyer principle misplaced.

The court finds support for its interpretation of the prudent buyer principle in the Court of Appeals' decision in *Memorial Hospital/Adair County Health Center, Inc. v. Bowen,* 829 F.2d 111 (D.C.Cir.1987). In *Memorial Hospital,* the defendant's administrative representative, the Provider Reimbursement Review Board, found that the prudent buyer principle supported the disallowance of certain reimbursements sought by the plaintiff for costs related to a pharmacist-supervised intravenous admixture program. *Id.* at 115, 118. After discussing the parties' contentions regarding the effect and applicability of the prudent buyer principle, the Court of Appeals found the prudent buyer principle inapplicable to the issues before it. *See id.* at 116, 118. The Court of Appeals found that the prudent buyer principle assumes the comparison of "similar items or services." *Id.* at 118 (quoting Section 2103 of the Provider Reimbursement Manual). Because the defendant in that case, HHS had failed to compare similar pharmacy service costs, the Court of Appeals held the prudent buyer principle inapplicable. *Id.*

Section 2103 of the Provider Reimbursement Manual,[4] cited frequently by

---

3. The court does not wish to forestall the possibility that the prudent buyer principle could apply under certain circumstances as a method of determining reasonable cost. *See New Jersey Chapter, Inc. of the American Physical Therapy Assoc. v. Prudential Life Ins. Co.,* 502 F.2d 500, 504–05 (D.C.Cir.1974) (relying on the prudent buyer principle); *LGH, Ltd. v. Sullivan,* 786 F.Supp. 1047 (D.D.C.1992) (Pratt, J.) (discussing the prudent buyer principle but rejecting the defendant's application of the principle in the case before the court); *New Jersey Speech–Language–Hearing Assoc. v. Prudential Ins. Co.,* 551 F.Supp. 1024, 1026–27 (D.N.J.1982) ("Intermediaries are therefore required to use the 'prudent buyer

principle' to determine the reasonableness of expenditures for speech therapy services provided under arrangement"). Nevertheless, the court's review of the relevant statutes and regulations forces the court to question the compatibility of the prudent buyer principle and the substantially out of line principle. The present dispute does not require the determination of such an overarching principle since the defendant's attempt to apply the prudent buyer principle was fundamentally flawed.

4. The court's discussion of the Provider Reimbursement Manual does not constitute an en-

the defendant, also supports this court's view of the prudent buyer principle. Although Section 2103 states that intermediaries may use various means to detect excessive costs, the very next sentence establishes the importance of comparing similar items or services. Sec. 2103 of the Provider Reimbursement Manual at 21–2.6 (7–96). It states that in detecting excessive costs, intermediaries may "compare[ ] the prices paid by providers to the prices paid for similar items or services by comparable purchasers...." *Id.* The Provider Reimbursement Manual Examples also illustrate this point. For instance, Example 1 describes a provider who makes no effort to obtain the most advantageous price and purchases supplies from Supplier R. Example 1 then discusses how Supplier W sells identical or equivalent supplies and is also convenient to the provider. This example shows the importance of comparing similar, equivalent, and equally convenient services when applying the prudent buyer principle.

Despite the importance of comparing similar items or services in trying to apply the prudent buyer principle, it is clear to the court that Aetna's action utterly failed in this respect. The defendant contends that Aetna properly relied upon a valid survey instrument in establishing the market amounts used to apply the prudent buyer principle. However, the court agrees with the plaintiff's position that the defendant, in applying the prudent buyer principle, significantly relied upon inaccurate data that resulted from a deficient study conducted by Aetna. The defendant's application of the prudent buyer principle in this case resulted in the comparison of dissimilar services and renders the agency's decision arbitrary and capricious. Alternatively, the court concludes that the defendant's partial disallowance of the plaintiff's reimbursement claim is unsupported by substantial evidence.[5]

The study conducted by Aetna, the fiscal intermediary, is easily susceptible to the detailed critique that the plaintiff makes of it.[6] The study conducted by Aetna was far from perfect, or even scientifically accurate. There are numerous examples, as detailed by plaintiff, of factors that Aetna probably should have, but did not, consider. There are other factors that Aetna found important enough to try to measure, but Aetna's attempt to conduct a valid measurement of these factors was faulty.[7] Although, this study was merely a tool used by Aetna to make a determination of

dorsement of its validity. Rather, it is appropriate for the court to demand that HHS act consistently with the agency's own interpretation of the relevant regulations. In this case, this is especially appropriate because the agency decision relied upon the Provider Reimbursement Manual. Moreover, to the extent that HHS' position with respect to the validity of the prudent buyer principle relies upon statements in the Provider Reimbursement Manual, those statements, as mere interpretive statements by the responsible agency, must yield to any relevant conflicting provisions of the Code of Federal Regulations.

5. In either case, the substantive standard of review is the same. *See Association of Data Processing Serv. Organizations, Inc. v. Board of Governors,* 745 F.2d 677, 683 (D.C.Cir.1984) (Scalia, J.). *See also Bangor Hydro–Electric Co. v. FERC,* 78 F.3d 659, 663 n. 3 (D.C.Cir.1996); *Maryland People's Counsel v. FERC,* 761 F.2d 768, 774 (D.C.Cir.1985).

6. Of course, the only deficiencies properly before the court for consideration are those asserted in the administrative proceedings before the defendant, not those asserted for the first time in this court.

7. The HCFA decision states, "The record indicates that the Intermediary's auditors used their professional judgment to identify a number of therapy companies serving multiple providers in each market which could conveniently and economically provide quality therapy services to the SNFs." Although this sentence uses all of the correct terminology, such as conveniently and economically, the court finds it a gross misrepresentation of reality. As evidenced by the plaintiff's memoranda and submissions to the agency, Aetna did not compare similar institutions in any sense. Moreover, professional judgment in this case is a misnomer. Aetna extrapolated from the data it collected and made estimates that amounted to guesswork as to the correct figures.

situations that should be addressed through case by case analysis, the study was such a faulty guide that it rendered the eventual decision unsupportable. Moreover, these faults were discussed by the plaintiff during the administrative proceedings.

The plaintiff argued that the study was faulty because it compared apples and oranges; not taking account of differences in type and quality of OT and ST services. *See* AR at 253. The plaintiff discussed how the study failed to account for differences in the length of treatment time; instead assuming that all patients are treated in 15 minute intervals. *See* AR at 251. The plaintiff discussed how the study failed to take account of vast differences in cost within the State of Washington, often comparing rural areas in Yakima with facilities in urban centers such as Seattle.[8] The plaintiff also pointed out to the defendant's representatives that the study was not based on a statistically-valid random sample of all skilled nursing facilities in Washington. *See* AR at 249. The plaintiff also argued that the study failed to specify a fiscal year for which information was sought. *See* AR at 17,249. This likely resulted in the inclusion of some 1994 fiscal year costs in a study intended to measure 1993 rates. *See id.* In fact, according to the provider's calculations, which seem more credible than those of the defendant, more than half of the survey respondents actually reported figures for the 1994 fiscal year.[9] *See* AR at 17 n. 5. Moreover, plaintiff complained that the study's respondents reported their charges to payers of OT and ST therapy rather than the costs the survey respondents actually incurred. *See* AR at 250. This necessitated that Aetna try to remedy this problem by translating these charges into costs by reviewing the therapy contracts submitted to Aetna, many of which were not in effect in 1993. *See id. See also* Basson Dep. at 239 (admitting problem in the study). These failings force this court to conclude that the decision of the HCFA is arbitrary and capricious and unsupported by substantial evidence.

The court also rejects the defendant's argument that deficiencies in its methods or study could be rectified by virtue of the fact that Eagle Healthcare had an opportunity to object to Aetna's disallowance of costs. The court finds that Eagle Healthcare made a sufficient showing that Aetna's actions were improper. Eagle Healthcare showed the deficiencies in the study and the problems with the way Aetna applied the relevant medicare regulations. In essence, the defendant would require the plaintiff to prove that there was no lower cost provider available. While this procedure may be permissible in other instances, it is surely not required when the plaintiff has already identified more than enough problems to render the defendant's action arbitrary and capricious, unsupported by substantial evidence, and invalid.

Moreover, in this case, Eagle Healthcare's costs were not substantially out of line under 42 C.F.R. 413.9(c)(2). As evidenced in the materials submitted to the court and to the administrative reviewing entities, the costs incurred by Eagle Healthcare fell within the lower half, if not the lower third, of the costs for similar services in the relevant geographic area.[10] *See* AR at 71 ("26 out of 38 SNFs in the Seattle area exceed the established $76 per hour limit, and the limit reflects only the

8. This may be especially significant here, because the provider contends that Aetna's $92 cost limit for OT services in the Yakima area is actually $4 lower than the lowest cost incurred by a provider in Yakima. *See* AR at 19, 238. Apparently, this is a result of Aetna incorrectly including the Walnut Grove facility within the Yakima area for purposes of compiling the study results. *See id.*

9. Apparently, only one survey respondent actually stated that it submitted figures for the 1993 fiscal year. AR at 17.

10. The HCFA decision found otherwise, *see* AR at 11–12, but it relied on the deficient study. *See supra.*

thirty second percentile of the range of costs incurred by the survey respondents in the Seattle MSA"). Thus, the defendant may not validly rely upon the substantially out of line provision as supporting the disallowances made by Aetna.

The defendant's decision, lacking the claimed support of either 42 C.F.R. 413.9(c)(2) or 42 C.F.R. 413.106(c)(5), must be overturned. The defendant's decision relies upon a faulty application of the relevant regulations, contradicts the reasonable cost provisions of the federal medicare statutes, and relies upon faulty evidence. Accordingly, the court finds it arbitrary and capricious and unsupported by substantial evidence.[11]

The court recognizes that the issue of medicare reimbursement is a difficult question of rising importance and concern in today's society. The court realizes that HHS must be allowed the flexibility to address this issue and perform its statutory duty of only reimbursing reasonable cost. However, HHS and its agents may not exceed the bounds of the applicable statutes, regulations, and agency interpretations. The defendant must remain vigilant less its efforts to limit reimbursement to appropriate levels eliminate the reimbursement of genuinely reasonable costs. Although a court should normally defer to an agency's expertise, it may not do so when the agency's actions exhibit a blatant lack of skill and care.

The court's resolution of the above issues renders it unnecessary for the court to address plaintiff's arguments that (1) the HCFA decision contravenes traditional notions of due process and fair play, (2) Section 2103 is void for vagueness, and (3) the plaintiff providers were subject to "selective enforcement" of the market amounts.

## IV. Conclusion

For the reasons set forth above, the court grants the plaintiff's motion for summary judgment and denies the defendant's cross-motion for summary judgment. An appropriate order accompanies this opinion.

### ORDER

Having considered the parties' cross-motions for summary judgment, it is this 2nd day of June, 1999, hereby

ORDERED that plaintiff's motion for summary judgment be, and hereby is, granted; and it is further

ORDERED that defendant's motion for summary judgment be, and hereby is, denied; and it is further

ORDERED that the Administrator's decision of September 12, 1997, be, and hereby is, reversed; and it is further

ORDERED that defendant promptly pay plaintiff the amount in controversy, plus interest in accordance with 42 U.S.C. § 1395oo(f)(2).

---

11. The court generally finds the HCFA decision unpersuasive. On the other hand, the court finds the decision of the lower reviewing entity, the PRRB, very thorough and persuasive.